**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES M. ALSTON, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No.: 12-5633 (FLW) |
| v. : | |
| : | |
| MONMOUTH COUNTY : | |
| PROSECUTOR'S OFFICE, THE : | **OPINION** |
| COUNTY OF MONMOUTH, : | |
| GREGORY J. SCHWEERS, individually : | |
| and in his official capacity, : | |
| Defendants. : | |
| : | |

**WOLFSON, United States District Judge**:

Presently before the Court is the motion for partial summary judgment filed by defendants, the Monmouth County Prosecutor's Office ("MCPO"), the County of Monmouth ("the County") and Monmouth County Assistant Prosecutor Gregory J. Schweers ("Schweers") (collectively "Defendants"). The instant case arises out of the criminal investigation of Plaintiff James M. Alston ("Plaintiff"), the former Chief of Police of Matawan Township, during which the MCPO, without a court order, confiscated Plaintiff's state-issued and personal firearms. While the criminal investigation against Plaintiff concluded without any charges being lodged, Plaintiff's guns were never returned.  Plaintiff filed the subject Complaint against Defendants, alleging violations of: 1) procedural due process rights pursuant to 42 U.S.C. § 1983; 2) N.J.S.A. 2C:58-3; and 3) the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.  In addition, Plaintiff also brings a state replevin claim against Defendants.  In the instant motion, Defendants

move for summary judgment on all counts, except the replevin claim. For the reasons that follow, Defendant's motion is **GRANTED**.

## BACKGROUND

For the purposes of this Motion, the following facts are not in dispute since Defendants accept Plaintiff's version of the facts as true. Plaintiff was Chief of Police of the Borough of Matawan ("the Borough") from 2008 until 2011. (Defendants Statement of Undisputed Facts ("DF"), ¶ 4.) On October 8, 2009, an incident occurred between Plaintiff and Anthony Gray. (Id., ¶ 5.) Mr. Gray then filed a complaint with the MCPO, alleging that Plaintiff was intoxicated and "flicked cigarette ashes at him." (Id.) In light of these allegations, the MCPO initiated a criminal investigation against Plaintiff. (Id., ¶ 6.) Consequently, on March 5, 2010, several detectives from the MCPO went to Plaintiff's residence, without a court order, and delivered a letter directing him to surrender his state-issued and personally-owned guns. (Id., ¶¶ 6, 7.) Plaintiff cooperated by voluntarily surrendering three state-issued guns and two of his own guns.[1] (Id., ¶ 8.)

Since the allegations against Plaintiff concerned potential substance abuse, the MCPO required Plaintiff to be examined by a medical professional to determine his fitness for duty. (Id., ¶ 9.) Plaintiff was examined by two doctors from the Institute of Forensic Psychology ("IFP"), both of whom found that Plaintiff was fit for duty. (Id., ¶ 10.) Soon after, the MCPO determined that there was insufficient evidence to warrant any further investigation into the pending criminal complaint against Plaintiff. (Id., ¶ 12.) Accordingly, the MCPO notified the Borough by letter that Plaintiff could be administratively re-armed subject to the Borough's discretion. (Letter dated May 12, 2010.) The Borough, however, chose not to re-arm Plaintiff, and instead filed

---

[1] It appears that Plaintiff's Complaint only relates to Defendants' confiscation of Plaintiff's personally-owned guns.

disciplinary charges against him on or about June 17, 2010. (DF, ¶ 14.) Plaintiff, the Borough, and the MCPO were then involved in a lengthy dispute over whether Plaintiff was fit to be re-armed and returned to duty. (Id., ¶¶ 14-17.)

On December 20, 2011, the MCPO -- for reasons unknown -- advised Plaintiff that he had to undergo another psychological evaluation before he could be re-armed. (Id., ¶ 19.) Although Plaintiff was deemed fit by his personal physician, defendant Schweer, an Assistant County Prosecutor assigned to the Professional Responsibility Unit of the MCPO, rejected that determination, and instructed Plaintiff to see another doctor from the IFP, Dr. Matthew Guller. (Id., ¶¶ 19-22.) However, Plaintiff objected to the evaluation on the grounds that Dr. Guller was biased in favor of Defendants, and thus, Dr. Guller's report was never released to the MCPO. (Id. ¶¶ 22, 23.) Consequently, Plaintiff was never deemed fit for duty, nor were his personal guns returned.

Plaintiff then filed a verified complaint and an order to show cause in the Superior Court of New Jersey, Monmouth County, seeking the return of his personal weapons. Despite inquires made by Plaintiff's counsel, four months passed without any action by the State Court. Plaintiff then withdrew the state court case, and later filed the subject Complaint against Defendants and the Borough on September 10, 2012, before this Court. During the pendency of this litigation, Plaintiff settled his claims with the Borough, leaving Defendants as the remaining parties. (Id. at 5.) Thereafter, Defendants filed the instant motion for partial summary judgment.

I.     STANDARD OF REVIEW

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010). A court

considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must view all inferences from the underlying facts in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c)(1)(A); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986).

More precisely, summary judgment should only be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. Id. at 248-49. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. "To be material, a fact must have the potential to alter the outcome of the case." DeShields v. Int'l Resort Props. Ltd., 463 F. App'x 117, 119 (3d Cir. 2012) (citation omitted).

In Count I of the Complaint, Plaintiff alleges that Defendants violated his procedural due process rights under 42 U.S.C. § 1983. In addition to a procedural due process claim, Plaintiff, in the same cause of action, asserts a takings claim. He alleges that "[u]nder the color of law, the MCPO, the County, and Schweers took Alston's property for public use, without just compensation." Compl., ¶ 68. The Court notes, however, that Defendant's motion for partial summary judgment does not address this claim. In Count II, Plaintiff asserts a state law claim for replevin. Count III of the Complaint alleges that Defendants violated N.J.S.A. 2C:58-3. Finally, Counts IV and V allege violations of New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 et seq. Defendants move for summary judgment on Counts I, III, IV, and V.

**DISCUSSION**

As an initial matter, Plaintiff contends that summary judgment would be improper at this stage because discovery is ongoing and Defendants have allegedly withheld relevant discovery. This argument fails since the relevant facts are not in dispute, further, Defendants accept Plaintiff's version of the facts for the purposes of this motion, and finally, the issues presented here involve questions of law, which are susceptible to summary judgment. See Lorenzo v. Griffith, 12 F.3d 23, 27, n.5 (3d Cir. 1993) (stating that even when discovery is incomplete, courts have discretion to determine whether summary judgment is "ripe for resolution," and when additional discovery is needed the non-moving party should move for a continuance under Rule 56(f)).

**A.    Count I – Procedural Due Process**

In Count I, Plaintiff alleges that Defendants violated his civil rights under 42 U.S.C. § 1983. Section 1983 provides that any person who under color of law "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. In that connection, Plaintiff claims that Schweers and the MCPO violated, inter alia, his procedural due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution by acting outside the scope of their criminal investigatory powers and confiscating his guns without a pre- or post-deprivation hearing. (Compl. at ¶ 15.) In response, Defendants assert that Plaintiff's procedural due process rights were not violated because New Jersey has constitutionally adequate post-deprivation procedures, and Plaintiff failed to avail himself of those procedures. (Def. Br. at 10.)

First, the Court notes that the Fifth Amendment's protection of due process "only applies to the federal government and not to state or local governments." Nguyen v. U.S. Catholic Conf., 719 F.2d 52, 54-55 (3d Cir. 1983). Since the Complaint does not allege wrongdoing by any federal actors, the Court will only address Plaintiff's procedural due process claim under the Fourteenth Amendment.  To succeed on this claim, Plaintiff must show that: (1) he had a property interest protected under Fourteenth Amendment; and (2) the procedures provided to him were constitutionally inadequate. See Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (citation omitted). Here, it is undisputed that Plaintiff's personally owned guns are protected property interests under the Fourteenth Amendment,[2] see Brown v. Muhlenberg Township, 269 F.3d 205, 213 (3d Cir. 2001), and that Defendants confiscated them during the investigation.  Having been deprived of property without a court order, the issue is whether Plaintiff was provided with constitutionally adequate pre- or post-deprivation procedures.

In determining whether a procedure is constitutionally adequate, courts "examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." Zinermon v. Burch, 494 U.S. 113, 126 (1990).  Here, although Plaintiff was not entitled to any statutory pre-deprivation proceedings,[3] this does not end the analysis. Even in the absence of a statutory requirement, the government should typically provide a hearing before it deprives a person of his property. Elsmere Park Club, L.P. v. Town of Elsmere, 542 F.3d 412, 417 (3d Cir.

---

[2] Plaintiff's state-issued guns are not similarly protected, as they are not Plaintiff's property.

[3] Plaintiff claims that N.J.S.A. 2C:64-4 entitled him to a pre-deprivation hearing. However, that statute explicitly states that a seizure may be made without a pre-deprivation hearing in cases where "the property subject to seizure poses an immediate threat to the public health, safety, or welfare." N.J.S.A. 2C:64-4. As discussed infra, the MCPO believed in good faith that Plaintiff posed a danger to the public safety in light of the alleged illegal conduct committed by Plaintiff. As such, Defendants did not violate N.J.S.A. 2C:64-4.

2008). However, the government "is relieved of the usual obligation to provide a pre[-]deprivation hearing" where quick action by the state is necessary or where providing any meaningful pre-deprivation process would be impractical. Munoz v. City of Union City, 481 F. App'x 754, 758 (3d Cir. 2012) (citation omitted). This issue is typically reserved for the Court's determination as a matter of law. Id.

In the instant matter, Plaintiff was accused of having a substance abuse -- alcohol -- problem and assaulting a civilian. Because of these allegations, the MCPO acted swiftly and confiscated Plaintiff's guns based on a good faith belief that he may have posed a danger to the public. The Court finds nothing in the record to undermine the propriety of the MCPO's decision. Under these circumstances, it was certainly within the MCPO's province to determine whether Plaintiff's alleged illegal actions would require an immediate response from the state. Indeed, the "law should not discourage officials from taking prompt action to insure the public safety." Elsmere Park Club, L.P., 542 F.3d at 418 (citation omitted). More significantly, Plaintiff concedes that he complied with the MCPO's directive by voluntarily surrendering his personal guns. Therefore, the Court finds that not only did the necessity for immediate action by the MCPO obviated the need for a pre-deprivation hearing, see Munoz, 481 F. App'x 754, but that Plaintiff's consent to seizure of his own guns supports the MCPO's decision to not provide such a hearing.

Accordingly, Plaintiff's Section 1983 claim turns on whether he had available to him a constitutionally adequate post-deprivation process and remedy. In that respect, the Third Circuit addressed the constitutional adequacy of New Jersey's post-deprivation procedures in Revell v. Port Auth., 598 F.3d 128 (3d Cir. 2010). In Revel, the plaintiff was arrested for possessing a handgun in an airport without a New Jersey permit. Id. at 132. As a result, the state confiscated

the plaintiff's gun without a pre-deprivation hearing. Id. Though the charges against the plaintiff were administratively dismissed, his weapon was not returned for over two years. Id. The plaintiff then filed a Section 1983 claim against the state, alleging that his procedural due process rights were violated because the state wrongfully withheld his gun by failing to provide an adequate post-deprivation procedure. Id. at 133. In rejecting this argument, the Third Circuit found that New Jersey's post-deprivation procedures (e.g., an action for replevin) are constitutionally adequate remedies for the return of property in cases where a pre-deprivation hearing is not required. Id. at 139. Since the state was not required to hold a hearing before confiscating the plaintiff's gun, and the plaintiff failed to take advantage of the state's available post-deprivation procedures, the court granted summary judgment to the state. Id. Revel thus stands for the legal proposition that if a pre-deprivation hearing is not required and a plaintiff fails to avail himself of the state's constitutionally adequate post-deprivation procedures, there is no deprivation of procedural due process rights. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (finding that when a state officer randomly and without authorization departs from established state procedures, the state need only provide post-deprivation procedures); Parratt v. Taylor, 451 U.S. 527, 543 (1981) (holding that a state tort claim (e.g., replevin) was an adequate remedy for a prisoner aggrieved by prison officials' actions of depriving the prisoner of his property).

     Guided by Revel, the Court holds that Plaintiff's due process claim cannot survive summary judgment. First, Plaintiff's guns were confiscated without a pre-deprivation procedure because the MCPO believed in good faith that he posed a danger to the public and further, that Plaintiff voluntarily surrendered his guns. Indeed, like the facts in Revel, the MCPO never brought any criminal charges against Plaintiff and continues to possess Plaintiff's guns. While

Plaintiff filed a replevin claim against Defendants in state court, he nevertheless withdrew that claim, because in his belief, inaction by the Superior Court for four months unduly delayed his procedural due process rights.[4]  Put differently, Plaintiff was aware of the state's available post-deprivation procedures, but failed to fully take advantage of his rights by abandoning his Superior Court action.  Perhaps more damaging to Plaintiff's assertion that his procedural due process rights were violated, Plaintiff has revived his replevin claim in this suit to vindicate his rights.  Therefore, Plaintiff's argument that Defendants deprived him of due process is without merit.  Plaintiff's Section 1983 claim fails as a matter of law.

Nonetheless, despite Revel's clear application to this case, Plaintiff argues that Revel is distinguishable on three grounds: (1) Plaintiff's guns were not seized in connection with an arrest; (2) the MCPO seized Plaintiff's guns according to an established state procedure; and (3) Plaintiff attempted to avail himself of New Jersey's post-deprivation procedures, but they proved to be inadequate. (Pl. Br. at 22, 25.) The Court addresses each in turn.

With respect to the first argument, the arrest in Revel is hardly distinguishable from the present case. The Court recognizes that while Plaintiff was never arrested, he was under a criminal investigation based on allegations that Plaintiff may have posed a danger to the public.

---

[4] Indeed, a mere allegation of a four-month delay does not arise to a constitutional violation.  The due process clause "requires provision of a [post-deprivation] hearing at a meaningful time." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 (1985). Thus, "there is a point at which an unjustified delay in completing a post-deprivation proceeding would become a constitutional violation." Federal Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 242 (1988) (internal citation omitted). The key point, however, is that the delay must be "unjustified." In that regard, the Third Circuit has held that the "mere allegation of a . . . twenty-month delay" without supplementary allegations concerning the cause of the delay does not state a constitutional claim. Ritter v. Cohen, 797 F.2d 119, 124 (3d Cir. 1986); Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005).  Here, Plaintiff does not include any allegations concerning the reason for the state court's four-month delay in not adjudicating the matter.

Indeed, based upon that concern, the MCPO took immediate action and confiscated Plaintiff's guns. Similarly, in Revel, the state defendants deemed the plaintiff a danger to the public when he was arrested without a permit for his guns. Thus, the Court finds no reason to distinguish Revel on the grounds that Plaintiff was not arrested. As to the second argument, Plaintiff erroneously relies on Logan v. Zimmerman Brush Co., 455 U.S. 222 (1982), for the principle that "if the deprivation of property is accomplished through an established state procedure rather than through 'random, unauthorized, action' [then] post-deprivation remedies do not satisfy the Due Process Clause." (Pl. Br. at 25.) Here, Plaintiff claims that the MCPO confiscated his guns according to an "established state procedure"; thus, New Jersey's post-deprivation procedures are necessarily inadequate. (Id.) The Court is unpersuaded. Not only is this argument inconsistent with Plaintiff's own version of events as alleged in his Complaint,[5] it also misconstrues the holding in Logan.

In Logan, the precise issue was whether the state violated the plaintiff's due process rights by failing to adhere to its statutory pre-deprivation procedure for terminated employees. Logan, 455 U.S. at 436. The Supreme Court only held that when a state terminates an employee without providing a required pre-termination hearing, a post-deprivation procedure would be constitutionally inadequate. Id. Here, Plaintiff was not entitled to any required pre-deprivation procedure. Accordingly, Plaintiff's reliance on Logan is misplaced.

---

[5] The Complaint alleges that the MCPO acted "outside the scope of its criminal investigatory powers." (Compl., ¶ 57.) Moreover, Plaintiff emphasizes in his brief that the MCPO acted without any authority whatsoever, since it seized his guns without a court order. (Plaintiff's Supplemental Statement of Disputed Material Facts, ¶ 5.) Plaintiff cannot have it both ways. Either the MCPO confiscated Plaintiff's guns according to an established procedure, or it did not. Nonetheless, the Court notes that even if Plaintiff claims that the MCPO acted randomly and without authority, this would not save Plaintiff's Section 1983 claim. See Williams v. Clancy, 449 F. App'x 87, 89 (3d Cir. 2011) (stating that even when a state officer randomly and without authorization departs from established state procedures in seizing property, the state need only provide post-deprivation procedures).

Plaintiff's third argument is equally unpersuasive. Specifically, Plaintiff claims that <u>Revel</u> does not apply because he filed an order to show cause in the Monmouth County Superior Court ("Superior Court"), but had to withdraw that action since there "was not any indication that the application had [been] acted on despite the passage of a full four (4) months from the time of filing." (Pl. Br. at 22.) According to Plaintiff, the Superior Court should have provided a hearing within thirty days, as required by N.J.S.A. 2C:58-3. (<u>Id.</u>) Thus, "it was reasonable for [Plaintiff] to file his District Court complaint at that juncture once it was clear the Superior Court failed to perform its obligation." (<u>Id.</u>) Essentially, Plaintiff is trying to bootstrap his Section 1983 claim against Defendants by virtue of the Superior Court's alleged inaction. However, this argument fails because the Superior Court was not required to take action within thirty days.

In relevant part, N.J.S.A. § 2C:58-3 states that "any person aggrieved by the <u>denial of a [firearms] permit or identification card</u> may request a hearing in the Superior Court . . . . [and] [t]he hearing shall be held and a record made thereof within 30 days of the receipt of the application for such hearing." N.J.S.A. 2C:58-3 (emphasis added). Here, Plaintiff does not allege that he was deprived of his <u>firearms permit or identification card</u>. Rather, Plaintiff accuses Defendants of depriving him of his property without due process. As such, Plaintiff's reliance on N.J.S.A. 2C:58-3 is mistaken. As Plaintiff has failed to provide any statute or case law establishing that the Superior Court excessively delayed the return of his guns in a manner that would amount to a constitutional violation, the Court finds that Plaintiff's voluntary withdrawal of his action in the Superior Court cannot not excuse him from pursuing any available post-deprivation proceedings.

In sum, the Court finds that the MCPO confiscated Plaintiff's guns due to circumstances that obviated the need for a pre-deprivation hearing. Further, the Court finds that Plaintiff has

failed to avail himself of New Jersey's constitutionally adequate post-deprivation procedures in the state court, and moreover, he is pursuing a replevin claim here, i.e., Count II.[6] Therefore, Plaintiff's procedural due process rights were not violated, and his Section 1983 claim fails as a matter of law. See Revel, 598 F.3d at 139; see also State v. One 1986 Subaru, 120 N.J. 310, 318 (1990) (explaining that an owner of seized property can file a replevin action or move to retrieve improperly seized property and that "because of the availability of [such] procedure . . . a claimant's inaction may weigh against a claim that his or her due-process rights have been violated"). In making such a decision, the Court does not comment on whether Plaintiff's substantive rights were violated. On this motion, because the Court finds that Plaintiff's procedural due process rights were not violated, he cannot defeat summary judgment in this regard.[7]

Having determined that neither the MCPO nor Schweers violated Plaintiff's procedural due process rights, it follows that the County cannot be held liable under Monell. See Badillo v. Amato, No. 13-1553 (FLW), 2014 U.S. Dist. LEXIS 10210, at *37 (D.N.J. Jan. 28, 2014) ("since there was no [constitutional] violation in the first place, there can be no claims against the municipality for deprivation [under Monell]"); Mulholland v. County of Berks, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (finding that "if a municipal employee inflicted no constitutional injury, it is inconceivable that the municipality could be liable") (internal quotations and citations omitted).

---

[6] E.g., N.J.R. 3:5-7 (motion for return of property); N.J.R. 4:61-1 (replevin).

[7] Because the Court finds that Plaintiff's constitutional due process rights were not violated, the Court need not address the parties' arguments with respect to qualified immunity.

### B. Count III – N.J.S.A. 2C:58-3

With respect to Count III, Defendants argue that Plaintiff's claim necessarily fails because N.J.S.A. 2C:58-3, a criminal statute, does not contain a private right of action. In that regard, Plaintiff concedes that the statute "does not expressly state that an aggrieved party may sue for damages." (Pl. Br. at 40.) However, although unclear from his Brief, Plaintiff appears to argue that because this case presents "an unusual fact pattern" -- in that the MCPO allegedly seized his firearms without following the proper procedures -- this Court should find an implied private cause of action under N.J.S.A. 2C:58-3. (Id.) The Court declines to do so.

Section 2C:58-3 of the New Jersey Criminal Code is a criminal statute that regulates the possession and transfer of firearms. Generally, courts will not infer a private right of action from a criminal statute alone. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, 511 U.S. 164, 190 (1994); In re Resolution of State Com. of Investigation, 108 N.J. 35, 41 (N.J. 1987) (stating that it would be "unusual" for a "bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone" to be construed as creating a private cause of action) (citation omitted). Although a statute's classification as "criminal" does not necessarily preclude implication of a private cause of action, see Cort v. Ash 422 U.S. 66, 79 (1975), the Court finds that Plaintiff has not established on this motion that he is entitled to relief under N.J.S.A. 2C:58-3.[8]

---

[8] In Cort v. Ash, the Supreme Court devised a four-factor test to determine whether a criminal statute contains an implied private right of action. See Cort, 422 U.S. at 79. The New Jersey Supreme Court subsequently adopted this test, and held that a criminal statute may, in limited circumstances, contain an implied right of action. See In re Resolution of State Com. of Investigation, 108 N.J. at 41. However, Plaintiff fails to establish any of these factors. Therefore, the Court does not have any basis to analyze whether an implied private right of action exists under N.J.S.A. 2C:58-3.

First, the cases on which Plaintiff relies do not support the claim that N.J.S.A. 2C:58-3 provides a private remedy. Plaintiff cites Weston v. State, 60 N.J. 36 (1972), for the proposition that if the state wishes to revoke a person's firearms purchaser identification card,[9] then a pre-deprivation hearing is required.[10] (Pl. Br. at 41.) This argument fails for the simple reason that the MCPO confiscated Plaintiff's personal guns — not his firearms purchaser identification card. Thus, Plaintiff's alleged grievance is not within the scope of the statute. Second, and more fundamentally, Plaintiff does not contend why somehow the statute's requirement of a pre-deprivation hearing entitles him to an implied civil remedy. Therefore, the Court grants summary judgment in favor of Defendants with respect to Count III.

### C. Counts IV and V – Law Against Discrimination

Finally, with respect to Counts IV and V, Defendants argue that Plaintiff cannot succeed on his claims for age and race discrimination under New Jersey's Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 et seq., because there is no employer/employee relationship between Plaintiff and Defendants. In response, Plaintiff does not allege that he was directly employed by Defendants. Rather, Plaintiff offers two alternative theories for Defendants' liability under the LAD. First, Plaintiff states that "based upon the facts of this case the MCPO may be considered a 'joint employer'" since it took a position that "displayed an interest in [Plaintiff's] employment . . . and it communicated on numerous occasions with the Borough regarding [Plaintiff's] employment." (Pl. Br. at 38.) Second, Plaintiff claims that even if there is no employment

---

[9] A firearms purchaser identification card is required to obtain guns other than handguns, such as rifles and shotguns. N.J.A.C. 13:54-1.3.

[10] Plaintiff cites additional cases to support this argument. However, they all reflect essentially the same principle as Weston v. State: that the revocation of a person's firearms purchaser identification card requires a judicial proceeding. (See Pl. Br. at 42-47.)

relationship, Defendants may be held liable under the LAD as a place of public accommodation. (Id.) The Court finds that neither argument has merit.

To establish an employment discrimination claim under the LAD, a plaintiff must show that an employment relationship existed. Pukowsky v. Caruso, 312 N.J. Super. 171, 184 (App. Div. 1998). In that respect, New Jersey courts have held that where a traditional employment relationship is lacking, a person may be deemed to be jointly employed by two entities for the purposes of the LAD. See e.g., Hoag v. Brown, 397 N.J. Super. 34, 53 (App. Div. 2007); Kurdyla v. Pinkerton Security, 197 F.R.D. 128, 134 (D.N.J. 2000). To determine whether a person is "jointly employed," courts analyze the following twelve factors:

> the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation-supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer"; (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

Thomas v. Cnty. of Camden, 386 N.J. Super. 582, 595-96 (App. Div. 2006) (citation omitted). The most important of these factors is the "the employer's right to control the means and manner of the worker's performance." Chrisanthis v. Cnty. of Atlantic, 361 N.J. Super. 448, 455 (App. Div. 2003). In the instant matter, although the Court would tend to agree with Defendants that there is no joint employment relationship between the MCPO and Plaintiff, it must emphasize that the issue is more nuanced than what either party claims.

First, the Court acknowledges that there is a statutory connection between a county prosecutors' office and a municipal police department. For example, it is well-established that prosecutors have "broad supervisory authority over the operations of municipal police

departments." Cherrits v. Vill. of Ridgewood, 311 N.J. Super. 517, 530-31 (App. Div.1998). As the New Jersey Supreme Court explained:

> It is a matter of common knowledge that the local law enforcement authorities . . . are responsive to the county prosecutor's concept of law enforcement on pain of possible indictment if they do not cooperate with him in enforcing the law. He does not stand alone. He is in a position to command the cooperation of all the law enforcing authorities in the county.

State v. Winne, 12 N.J. 152, 169 (1953) (emphasis added); see also N.J.S.A. 2A:158-5 (stating that each county prosecutor is vested with the same powers, within the county, as the attorney general); N.J.S.A. 52:17B-112(b) ("It shall be the duty of the police officers of the several counties and municipalities . . . to cooperate with and aid . . . the several county prosecutors in the performance of [their duties].")

However, other than the general notion that prosecutors may exercise supervisory authority over municipal police, Plaintiff has not established that a joint employment relationship existed for the purposes of the LAD. Specifically, Plaintiff has not shown that Defendants: (a) controlled his day to day activities; (b) paid him directly or indirectly; (c) furnished his equipment or workplace; or (d) controlled the manner of his termination. Indeed, Plaintiff fails to address any of the above factors whatsoever. Plaintiff's bare assertion that the MCPO "employed" Plaintiff because it displayed an "interest" in his employment is both vague and unsupported by case law. Whatever "interest" the MCPO had in Plaintiff was due to the allegations of Plaintiff's substance abuse and the need to ensure that the public is protected from any possible illegitimate use of his firearms. That the MCPO continued to inquire about Plaintiff's mental health and fitness for employment is far from establishing that the MCPO jointly employed Plaintiff for the purposes of the LAD under the New Jersey Supreme Court

precedent. Accordingly, Plaintiff's employment discrimination claim under the LAD fails as a matter of law.

Nonetheless, Plaintiff claims that even if the MCPO was not his "joint employer," it is considered a "place of public accommodation" under the LAD.[11] The Court disagrees. Although "the prohibition of discrimination in relation to public accommodation is functionally distinct from the ban on employment discrimination," Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 67 (1978), Plaintiff does not claim that he was denied any public accommodation or privilege provided by the MCPO. As alleged in the Complaint, Plaintiff's LAD claims are essentially employment-discrimination claims. Yet, in his reply brief, Plaintiff attempts to revive his LAD claims by alleging vaguely that the MCPO, as a place of public accommodation, discriminated against him by confiscating his guns. However, this argument is misplaced, as the MCPO is not the agency that provides or suspends gun permits for the general public. Rather, as correctly alleged by Plaintiff in the Complaint, the MCPO confiscated Plaintiff's guns in connection with allegations of wrongdoing related to his employment as a police officer. Consequently, Plaintiff has not established that the MCPO denied him of any "advantages, facilities or privileges" that the MCPO otherwise provides to the public. N.J.S.A. 10:5-12(f)(1). Thus, Plaintiff's public accommodation claim under the LAD fails as well.[12] In sum, the Court finds that Plaintiff has not shown on this Motion that his claims for age and race discrimination under the LAD can

---

[11] The LAD provides that "it shall be . . . unlawful discrimination . . . for any agent, or employee of any place of public accommodation . . . to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof." N.J.S.A. 10:5-12(f)(1). Here, it is undisputed that the MCPO is a public entity, and therefore, a place of public accommodation. See Ptaszynski v. Uwaneme, 371 N.J. Super. 333, 346-47 (App. Div. 2004).

[12] Plaintiff's LAD claim fails for the additional reason that he has not alleged, let alone established, the prima facie elements of a LAD claim based his age and race.

succeed. Thus, the Court grants summary judgment in favor of Defendants on Counts IV and V of the Complaint.

Finally, the Court remarks that Defendants have not moved on Plaintiff's state law replevin claim. The Court acknowledges that this type of claim, in a post-deprivation context, would typically be brought in state court. Indeed, Plaintiff attempted to do so before he withdrew the state case and filed that claim here. Having dismissed Plaintiff's procedural due process claim, potential subject matter jurisdiction issues on that claim may arise for this Court's consideration. Furthermore, neither party has discussed Plaintiff's takings claim. In that claim, Plaintiff simply asserts that Defendants are taking his personal property without just compensation. Whether such a claim survives judicial scrutiny is not before the Court on this motion.

## II. CONCLUSION

For the reasons set forth above, the Court finds that as a matter of law, Plaintiff has not shown on this motion that he can succeed on Counts I,[13] III, IV, and V. With respect to Plaintiffs Section 1983 claim, he has failed to demonstrate that his procedural due process rights were violated in the first instance. In that connection, the Court does not make any findings as to whether Defendants violated any of Plaintiff's substantive rights under state or federal constitutions. Similarly, Plaintiff's LAD claims fail because he has not shown that he was employed by Defendants, or that Defendants denied him any privileges that they provided to the public. Lastly, Plaintiff has not established that N.J.S.A. 2C:58-3 provides a private right of action. Accordingly, the Court **GRANTS** Defendants' motion for partial summary judgment.

DATED: March 19, 2014                                   /s/      Freda L. Wolfson
                                                                                                 Freda L. Wolfson
                                                                                                  United States District Judge

---

[13] To be clear, Plaintiff's takings claim in Count I still remains in this case.